IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CATHERINE LYNN PITTMAN and TROY VERNON PITTMAN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:13-CV-00380-DGK |
| FARMERS FIRE INSURANCE EXCHANGE, | ) ) ) | Judge D. Gregory Kays |
| and | ) ) | |
| COLBY YODER, | ) ) | |
| Defendants. | ) | |

## <u>MOTION OF DEFENDANT COLBY YODER FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant Colby Yoder (hereinafter "Defendant") hereby moves this Court for an Order granting summary judgment in favor of the Defendant on all the claims of Plaintiffs Catherine Lynn and Troy Vernon Pittman (hereinafter "Plaintiffs") set forth in their Petition. A Suggestion in Support of this motion is filed herewith.

Respectfully Submitted,

*/s/ Jeffrey J. Brinker*

Aaron Mandel, #39692MO
Jeffrey J. Brinker, #30355MO*
Michael C. Bowgren, #57450MO*
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
jbrinker@brinkerdoyen.com
mbowgren@brinkerdoyen.com
amandel@brinkerdoyen.com

***Attorneys for Defendant Colby Yoder***
*Admitted *Pro Hac Vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 4

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ......................................... 8

SUGGESTION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT .................. 16

    A. Summary Judgment Standard .................................................................. 16

    B. Plaintiffs Have No Standing to Pursue their Claims because the Bankruptcy Trustee is the Real Party in Interest not the Plaintiffs .............................................................. 16

    C. Choice of Law: The Doctrines of "Express Preemption" and "Conflict Preemption" Preclude Plaintiffs' State Law Claims ...................................................... 17

        1. The Policy is part of the National Flood Insurance Program ............................. 18

        2. Plaintiffs' Policy is a Standard Flood Insurance Police, containing the exact same terms and conditions as prescribed by Federal law ........................................... 18

        3. Article IX of Plaintiffs' SFIP contains a preemption clause .............................. 19

        4. Plaintiffs' Missouri contract law and vexatious refusal claims are preempted by NFIP provisions governing contract law claims ............................................. 19

        5. Plaintiffs' Missouri tort law claim for negligent misrepresentation is preempted by Federal law ....................................................................................... 20

    D. Plaintiffs Failed to Timely Institute their Claims against Defendant because they did not File their Action within One Year of the Denial of their Claim ............................... 24

    E. Plaintiffs' Proof of Loss was Untimely and Incomplete because Plaintiffs did not submit the Proof of Loss within 60 days and Admitted it was Incomplete ........................ 25

    F. Plaintiffs' State Law Claims Fail under Missouri Law ........................................... 28

        1. Defendant was not a party to the contract and the contract was not breached .... 28

        2. Vexatious Refusal is not applicable to Defendant ............................................. 29

        3. Plaintiffs' negligent misrepresentation claim fails as a matter of Missouri law . 31

3

**TABLE OF AUTHORITIES**

**Cases**

*3608 Sounds Ave. Condo. Assoc. v. S. Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J. 1999).........24

*Aaron v. Havens*, 758 S.W.2d 446 (Mo. banc 1988) ....................................................................33

*Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969 (8th Cir. 2008).................................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................16

*Asmus v. Capital Region Family Practice*, 115 S.W.3d 427 (Mo. App. W.D. 2003) ..................17

*Bucksaw Resort, LLC v. Mehrtens*, 414 S.W.3d 39 (Mo. W.D. App. 2013) ...............................33

*Busey Truck Equipment, Inc. v. American Family Mut. Ins. Co.*, 299 S.W.3d 735 (Mo. App. E.D. 2009)...........................................................................................................................32, 33

*C.E.R.1988, Inc. v. Aetna Cas. and Sur. Co.*, 386 F.3d 263 (3rd Cir. 2004)...................21, 22, 24

*Campo v. Allstate*, 562 F.3d 751 (5th Cir. 2009)........................................................................21

*Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204 (Mo. App. E.D. 1990)...................28

*Dawkins v. Witt*, 318 F.3d 606 (4th Cir. 2003) ..........................................................................26

*Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454 (Mo. banc 2006)...................................30

*Durkin v. State Farm Mut. Ins. Co.*, 3 F.Supp.2d 724 (E.D. La 1997)........................................24

*Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7 (Mo. banc 2012).........33

*English v. General Electric Company*, 496 U.S. 72 (1990)..........................................................19

*Evanoff v. Standard Fire Ins. Co.*, 534 F.3d 516 (6th Cir. 2008) ...............................................26

*Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000).........................................23, 26

*Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943 (6th Cir. 2002) ..................................................24

*Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951 (5th Cir. 1998) ..........................................26

*Gray v. City of Valley Park, Mo.*, 567 F.3d 976 (8th Cir. 2009) .................................................16

*Gunter v. Farmers Ins. Co., Inc.*, 736 F.3d 768 (8th Cir. 2013).............................................20, 23

4

*Haynes v. Edgerson*, 240 S.W.3d 189 (Mo. App. W.D. 2007)........................................................32

*Hecker v. Missouri Property Ins. Placement Facility*, 891 S.W.2d 813 (Mo. 1995) ...................33

*Heckler v. Community Health Servs.*, 467 U.S. 51 (1984) ............................................................22

*In re Brooks*, 227 B.R. 891 (Bankr.W.D.Mo.1998).....................................................................17

*Kinder v. Holden*, 92 S.W.3d 793 (Mo. App. W.D. 2002) ..........................................................17

*Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001) ...............................................25, 26, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)....................................16

*Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.*, 971 S.W.2d 302 (Mo. banc 1998).................30

*Moffett v. Computer Science Corp.*, 457 F.Supp.2d 571 (D.Md. 2006) .......................................21

*Neill v. State Farm Fire and Cas. Co.*, 159 F.Supp2d 770 (E.D. Penn.).....................................24

*Novikov v. Allstate Ins. Co.*, 2001 WL 880852 (E.D. Cal. 7/11/01) .............................................24

*Parshall v. Buetzer*, 121 S.W.3d 548 (Mo. App. W.D. 2003) ......................................................33

*Peal v. North Carolina Farm Bureau Mut. Ins. Co., Inc.*, 212 F.Supp.2d 508 (E.D.N.C. 2002)
..................................................................................................................................................22, 24

*Perkins v. Fleetline, Inc.*, No. 4:96CV2004 FRB, 1998 WL 35178378 (E.D.Mo. July 8, 1998)..30

*Phelps v. FEMA*, 785 F.2d 13 (1st Cir. 1986)..............................................................................26

*Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F.Supp.2d 750 (D.Md. 2006)...............................21

*Russell v. Reliance Ins. Co.*, 672 S.W.2d 693 (Mo. App. S.D. 1984) ..........................................32

*Richey v. Philip*, 259 S.W.3d 1 (Mo. App. W.D. 2008) ...............................................................34

*Scherz v. South Carolina Ins. Co.*, 112 F.Supp.2d 1000 (C.D. Cal. 2000)....................................24

*Shuford v. Fidelity Nat'l. Prop. Cas. Ins. Co.*, 508 F.3d 1337 (11th Cir. 2007) ...................20, 26

*State ex rel. William Ranni Associates, Inc. v. Hartenbach*, 742 S.W.2d 134 (Mo. banc 1987)...28

*Smith ex rel. Stephan v. AF & L Ins. Co.*, 147 S.W.3d 767 (Mo. App. E.D. 2004)......................31

*Suopys v. Omaha Prop. & Cas. Ins. Co.*, 404 F.3d 805 (3rd Cir. 2004) ......................................26

5

*Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.*, 236 S.W.3d 651 (Mo. App. E.D. 2007) .....30, 31

*Town & Country Appraisals, LLC v. Hart*, 244 S.W.3d 187 (Mo. App. E.D. 2007) ..................29

*Trotter's Corp. v. Ringleader Rests., Inc.*, 929 S.W.2d 935 (Mo. App. E.D. 1996) ....................28

*Tyler v. Harper*, 744 F.2d 653 (8th Cir. 1984) ..........................................................................16

*United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983)..........................................................17

*Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161 (3rd Cir. 1998) .........................................23

*Wierman v. Casey's Gen. Stores*, 638 F.3d 984 (8th Cir. 2011)...................................................16

*Williams v. City of St. Louis*, 783 F.2d 114 (8th Cir. 1986).........................................................16

*Wood v. Safeco. Ins. Co. of Am.*, 980 S.W.2d 43 (Mo. App. E.D. 1998) ......................................31

*Wright v. Allstate*, 415 F.3d 384 (5th Cir. 2005) ........................................................................24

## Statutes and Regulations

11 U.S.C. §323 ...............................................................................................................................17

11 U.S.C. §541(a)(1)........................................................................................................................17

11 U.S.C. §701(a)(1)........................................................................................................................17

18 U.S.C. §1001 ..............................................................................................................................27

42 U.S.C. §4001 ..............................................................................................................................18

42 U.S.C. §4013...............................................................................................................................23

42 U.S.C. §4017...............................................................................................................................23

42 U.S.C. §4017(a) ..........................................................................................................................21

42 U.S.C. §4017(d) ..........................................................................................................................21

42 U.S.C. §4019...............................................................................................................................23

42 U.S.C. §4053...........................................................................................................................19, 20

42 U.S.C. §4072...........................................................................................................................20, 23

6

44 C.F.R. §61.13 ..................................................................................................18

44 C.F.R. §61.13(d) ..........................................................................................12, 18

44 C.F.R. §61.13(e) ..........................................................................................12, 18

44 C.F.R. §61.3 .................................................................................................12, 18

44 C.F.R. §61.4(b) ............................................................................................12, 18

44 C.F.R. §62.23 ..................................................................................................18

44 C.F.R. §62.23(c) ..........................................................................................12, 18

44 C.F.R. §62.23(d) ..............................................................................................18

44 C.F.R. §62.23(g) ..............................................................................................21

44 C.F.R. §62.23(i)(6) ...........................................................................................21

44 C.F.R. §62.23(i)(9) ...........................................................................................21

44 C.F.R. Pt. 61, App. A(1) .........................................................................12, 18, 19

44 C.F.R. Pt. 61, App. A(1), Art. III(B)(3) ...................................................29, 32, 33

44 C.F.R. Pt. 61, App. A(1), Art. VII(R) ................................................................25

44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(4) ............................................................26

44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(5) ............................................................26

44 C.F.R. Pt. 61, App. A(1), Art. IX .........................................................19, 23, 24

§375.420, RSMo (2000) ........................................................................................30

**Rules**

Fed.R.Civ.P. 12(h)(3).......................................................................................16, 17

Fed.R.Civ.P. 56(e) ................................................................................................16

7

# STATEMENT OF UNCONTROVERTED MATERIAL FACTS[1]

## A. Plaintiffs' Petition

1.        On March 11, 2013, Catherine and Troy Pittman (hereinafter "Plaintiffs") filed a two count petition against Colby Yoder (hereinafter "Defendant") in the Circuit Court of Cass County, Missouri.  See Plaintiffs' Petition 13CA-CV00768 (attached as "Exhibit A").

2.        Count I is against both Farmers Fire Insurance Exchange (hereinafter "Farmers") and Defendant, and alleges claims for breach of contract and vexatious refusal to pay.  Exhibit A at ¶¶1-11.

3.        The Petition alleges that Plaintiffs were owners of a single family home located at 24004 S.W. Hidden Valley Road, Peculiar, MO 64078 (hereinafter the "Property").  Id. at ¶1.

4.        Plaintiffs purchased an insurance policy from Farmers through Defendant, Policy #87-0400-2464-2007 (hereinafter the "Policy"), insuring them and the Property against loss July 6, 2007 through July 6, 2008.  Id. at ¶2.

5.        The Policy covered loss to the Property consisting of three or more floors and a basement.  Id. at ¶3.

6.        The Property is located on 20 acres that abut the South Grand River.  Id. at ¶4.

7.        On June 4, 2008, Ms. Pittman discovered the basement of their house was full of water.  Id. at ¶5.[2]

8.        Plaintiffs notified Defendant of the flood and claim that he "orally confirmed to Cathy Pittman that the policy protected plaintiffs against any resulting loss."  Id. at ¶6.

---

[1] Hereinafter referred to as "SUMF."
[2] The Petition erroneously identifies the date of the flood as June 3, 2008.  The date of the flood is not in dispute as Ms. Pittman acknowledges the flood date to be June 4, 2008.  See Deposition of Plaintiff Catherine Pittman (attached as "Exhibit B"), p.8, lines 9-12.

8

9. Plaintiffs claim that an insurance adjuster, Pete Cali, arrived to the Property on the day of the flood and "told Cathy Pittman that she did not have contents coverage and offered $23,000.00 for partial damage to the structure." Id. at ¶7.

10. Ms. Pittman immediately contacted Defendant again who stated to Ms. Pittman that "the contents were a covered loss." Id.

11. Plaintiffs claim that Defendant had the "real or apparent authority to make this representation on his behalf and on behalf of Farmers." Id.

12. Plaintiffs claim that Defendant breached the insurance contract with Plaintiffs by "failing and refusing to pay plaintiffs for the insured loss after specifically telling plaintiff Cathy Pittman that the loss was covered under the policy." Id. at ¶10.

13. Plaintiffs claim that Defendant "acted vexatiously by refusing to pay Plaintiffs for the loss and, accordingly, are liable for penalties for their vexatious refusal to pay same." Id. at ¶11.

14. Count II is against Defendant only and alleges negligence. Id. at ¶¶12-21.

15. Plaintiffs allege that Defendant was the Farmers agent "whom with the plaintiffs dealt in order to purchase a policy of insurance." Id. at ¶13.

16. Plaintiffs claim that Defendant "represented to the plaintiffs that an insurance policy on the property from Farmers Fire Insurance Exchange insured the plaintiffs and the property against loss of contents as a result of a flood or fire." Id. at ¶14.

17. Plaintiffs claim that Defendant "further represented that the policy of insurance which he sold to the plaintiffs insured the contents of the premises for loss due to flood." Id. at ¶15.

18.     Plaintiffs claim that they suffered a loss to their personal property contents due to flooding on June 4, 2008.  Id. at ¶16.

19.     Plaintiffs claim that Farmers "denied the plaintiffs' claim and stated as a reason that plaintiffs did not have coverage for a loss sustained to their personal property contents due to flooding."  Id. at ¶17.

20.     Plaintiffs claim that "the representations made to plaintiffs by the defendant Colby Yoder were made negligently."  Id. at ¶18.

21.     Plaintiffs claim that Defendant was negligent in two ways:

a.   "He represented to the plaintiffs that he had sold them a policy which covered a loss due to flooding to personal property contents" and

b.   "The defendant negligently failed to secure coverage for the plaintiffs with the Farmers Fire Insurance Exchange for personal property/contents coverage to flooding."  Id. at ¶19.

22.     Plaintiffs claim that Defendant failed to meet the standard of care which a reasonable insurance agent would perform under the same or similar circumstances.  Id. at ¶20.

23.     Plaintiffs claim that as a direct and proximate cause of Defendant's negligence, Plaintiffs were caused damage in excess of $25,000.00.  Id. at ¶21.

**B.  Removal**

24.     Farmers removed this case to federal court by petition on April 17, 2013.  See Notice of Removal, Docket No. 1, Filed 4/17/2013.

**C.  Procurement of Policy**

25.     Ms. Pittman first spoke with Defendant over the phone the summer of 2006 or 2007 about insuring the Property against a flood.  See Deposition of Plaintiff Catherine Pittman (attached as "Exhibit B"), 66:8-12; 67:1.

26.     Ms. Pittman knew Defendant was an agent of Farmers.  Exhibit B at 17:10-18.

27.     Together, the Defendant and Ms. Pittman completed the application for flood insurance over the phone.  Id. at 67:8-11.

28.     Defendant asked Ms. Pittman many questions regarding the Property.  Id. at 99:21-100:9.

29.     These questions were all "required application questions associated with the purchase of a Standard Flood Insurance Policy ('SFIP')."  See Affidavit of Colby Yoder (attached as "Exhibit C"), ¶6.

30.     One of the topics covered was the "lower most level of the property."  Exhibit C at ¶7.

31.     Defendant asked Ms. Pittman if the insured property contained a basement.  Id. at ¶8.

32.     Defendant asked Ms. Pittman if the basement was a "walk-out" basement.  Id. at ¶9.

33.     Ms. Pittman told Defendant that her basement was fully enclosed.  Id. at ¶10.

34.     Ms. Pittman admits that the Property consisted of a main level, an upstairs, and a fully enclosed basement.  Exhibit B at 13:15-18; 99:4-15.

35.     Defendant confirmed to Ms. Pittman that the coverage limits of Policy were $250,000 for the building and $100,000 for the contents.  Id. at 74:23-25.

36.     Ms. Pittman knew the coverage limits of the Policy.  Id. at 70:18-22.

11

37.　　Ms. Pittman was satisfied with the coverage limits of the Policy.  Id. at 71:5-7.

38.　　Ms. Pittman admits that Defendant obtained a flood insurance policy as she requested.  Id. at 69:14-17.

39.　　Defendant procured the only flood policy available.  Exhibit C at ¶11.

40.　　To Defendant's knowledge there was no other flood insurance policy available. Id. at ¶13.

41.　　To Defendant's knowledge all terms of the SFIP are mandated by federal law.  Id. at ¶12.

### D.  Plaintiffs' Policy

42.　　The Flood Policy Declarations clearly indicate a building coverage limitation of $250,000 and a contents coverage limitation of $100,000.   See Flood Policy Declarations (attached as "Exhibit D").

43.　　The Flood Policy Declarations clearly indicate that, "Coverage Limitations May Apply, Refer to your Standard Flood Insurance Policy for details."  See Exhibit D.

44.　　Ms. Pittman received and reviewed the declarations page of her flood policy as shown in Exhibit D.  Exhibit B at 74:8-11.

45.　　Ms. Pittman also received a copy of the SFIP.  Exhibit B at 84:18-20.

46.　　The SFIP is found in 44 C.F.R. Pt. 61, App. A(1) (attached as "Exhibit E").  See 44 C.F.R. §§61.4(b), 61.3, 61.13(d), (e), 62.23(c).

47.　　Ms. Pittman never read the SFIP.  Exhibit B at 76:19-21.

### E.  Adjustment of Loss

48.　　Ms. Pittman claims that she spoke with Defendant on two separate occasions on the day of the flood.  Exhibit A at ¶¶6-7.

49.     In the first conversation with Defendant the morning of the flood, Plaintiffs claim that Defendant said, "Your contents are covered for up to $100,000 and your structure is covered for up to $250,000." Exhibit B at 75:23-76:3.

50.     Peter Cali is the adjustor who examined Plaintiffs' water damage, including water damage in the basement. Exhibit B at 24:24:9-11.

51.     Mr. Cali examined the property and offered a check to the Plaintiffs for their flood damages for an amount over $21,000. Exhibit B at 25:1-4.

52.     Plaintiffs claim that Mr. Cali told Ms. Pittman that Plaintiffs did not have contents coverage on the Property. Exhibit A at ¶7.

53.     In the second conversation, after Mr. Cali told Ms. Pittman that Plaintiffs did not have contents coverage, Ms. Pittman called Defendant and claims that Defendant stated the contents were a covered loss. Exhibit A at ¶7.

54.     Plaintiffs claim that after the flood, during both conversations with Defendant, one before Mr. Cali examined the property and one after Mr. Cali examined the property, Defendant said Plaintiffs were "100 percent covered." Exhibit B at 94:24-95:22.

55.     During the conversation after the flood, Defendant read the coverage limits of the policy contained in the Declarations page to Ms. Pittman over the phone. Exhibit C at ¶15.

### F.  Farmers Denied Plaintiffs' Loss

56.     Farmers denied the Plaintiffs' insurance claim on October 17, 2008 for failing to file their proof of loss within 60 days. See Letter of Denial (attached as "Exhibit F").

### G.  Plaintiffs' Bankruptcy

57.     On June 18, 2010, Plaintiffs filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the Western District of Missouri. See Bankruptcy Petition

No. 10-43319-can7, Docket No. 1, U.S. Bankruptcy Court Western District of Missouri (Kansas City), filed June 28, 2010.

## H. Proof of Loss

58.     Plaintiffs executed their proof of loss on July 2, 2012.  Exhibit B at 92:14-19.

59.     Plaintiffs admit that there is no proof of loss dated on or before August 3, 2008, that is sworn, complete (meaning it supplies all information listed in SFIP Art. VII(J)(4)), and which seeks the funds that are now being sought in this lawsuit.  See Fire Insurance Exchange's First Request for Admissions to Plaintiffs (attached as "Exhibit G"), Response No. 5.

60.     Plaintiffs' net amount claimed in their proof of loss is $26,882.67.  See Proof of Loss (attached as "Exhibit H"), Line 9.

61.     Ms. Pittman admits that that when she and her husband signed the proof of loss document, their loss was much more than $26,882.67.  Exhibit B at 93:21-25.

## I. Settlement with Farmers

62.     Plaintiffs wanted to settle with Farmers for the amount claimed in the proof of loss and then recover more for their losses against Defendant.  Exhibit B at 92:22-93:13.

63.     Plaintiffs' understanding was they would no longer have to "deal with the Federal" part of the case after settling for $26,882.67.  Exhibit B at 42:4-12.

64.     On August 30, 2012 Plaintiffs executed a release with Farmers.  Compromise, Settlement and Release (attached as "Exhibit I").

65.     In exchange for $26,862.67, the net amount claimed in the Plaintiffs' proof of loss, Plaintiffs agreed to settle their claims against Farmers.  See Exhibit I.

66.     Farmers issued a check to Plaintiffs in the amount of $3,297.48.  See Check attached as "Exhibit J".

14

67.     Farmers also issued a check to Plaintiffs and Countrywide in the amount of $23,565.19.  See Check attached as Exhibit K.

68.     Farmers believes that the SFIP requires that the mortgage company be named as a payee on building payments.  Exhibit B at 45:9-13.

69.     Farmers' check of $3,287.48, Exhibit J, was a check for the damage to contents claimed in the Proof of Loss, Exhibit H.  See Exhibit B at 41:15-20.

70.     Plaintiffs received and cashed the check for $3,287.48 resulting from their contents coverage under the SFIP.  See Exhibit B at 43:23-44:2.

71.     Plaintiffs were unable to cash the check for $23,565.19, for building coverage, because Bank of America, who now owns the Property, would not endorse the back of the check. Exhibit B at 45:19-23.

72.     Plaintiffs have petitioned the Court for the disbursement of the remaining $23,565.19 settlement funds which was denied without prejudice in part because it is unclear whether the proper parties are in this action and the Court was reluctant to disburse any money that other parties may have a claim to without these parties being notified.  Order Denying Withdraw of Interpleaded Funds, Docket No. 39, Filed 1/26/2015.

## SUGGESTION IN SUPPORT OF MOTION OF FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert denied, 470 U.S. 1057 (1985). However a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but . . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. Plaintiffs Have No Standing to Pursue their Claims because the Bankruptcy Trustee is the Real Party in Interest not the Plaintiffs

Plaintiffs are not the real parties in interest in this case and therefore Plaintiffs have no standing. "If a plaintiff lacks standing, the district court has no subject matter jurisdiction." Gray v. City of Valley Park, Mo., 567 F.3d 976, 980 (8th Cir. 2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P.

16

12(h)(3); <u>Alternate Fuels, Inc. v. Cabanas</u>, 538 F.3d 969, 975 (8th Cir. 2008) (subject matter jurisdiction can be raised at any time). Whether a party has standing to bring a cause of action is a question of law. <u>Kinder v. Holden</u>, 92 S.W.3d 793, 803 (Mo. App. W.D. 2002).

When an individual files for bankruptcy, his property, including any legal or equitable interests, becomes property of the bankruptcy estate. 11 U.S.C. §541(a)(1); <u>In re Brooks</u>, 227 B.R. 891, 893 (Bankr.W.D.Mo.1998). The scope of section 541 is broad, and includes causes of action. <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 205 & n. 9 (1983). Thus, Plaintiffs' claims for breach of contract, vexatious refusal, and negligent misrepresentation are causes of action and property of the bankruptcy estate. SUMF 57.

After the estate is opened and a trustee is appointed, the trustee then has the capacity to sue and be sued. <u>Brooks</u>, 227 B.R. at 894; 11 U.S.C. §701(a)(1); 11 U.S.C. §323. Upon appointment of the trustee, the "debtor no longer has standing to pursue a cause of action which existed at the time the order for relief was entered." <u>Asmus v. Capital Region Family Practice</u>, 115 S.W.3d 427, 431 (Mo. App. W.D. 2003) citing <u>Brooks</u>, 227 B.R. at 894. "[T]he trustee's right to sue on behalf of the estate is an exclusive right." <u>Id</u>. (internal citations omitted).

Clearly, it is the trustee then that is the real party at interest in this case, not Plaintiffs. It is the trustee that has the capacity to sue on behalf of Plaintiffs. When the trustee was appointed in Plaintiffs' bankruptcy case, Plaintiffs no longer had standing to pursue these claims. Plaintiffs therefore lack any standing in their current action against Defendant. Accordingly, Defendant is entitled to summary judgment as a matter of law on the claims against him.

**C. Choice of Law: The Doctrines of "Express Preemption" and "Conflict Preemption" Preclude Plaintiffs' State Law Claims**

Even if the Court were to rule that Plaintiffs have standing, the Court should rule that federal law precludes all state law claims against Defendant. Because Plaintiffs bring only

Missouri state law claims against Defendant for a dispute arising out of a federal insurance program, a choice of law analysis is in order which will demonstrate to the Court why it should hold Plaintiffs' contract and tort claims are precluded by federal law and that Defendant is entitled to summary judgment as a matter of law.

**1. The Policy is part of the National Flood Insurance Program.**

The choice of law analysis begins with a brief examination of the federal insurance program involved in this case. Flood insurance is issued by the U.S. Government's National Flood Insurance Program (hereinafter the "NFIP"). <u>See</u> 42 U.S.C. §4001, *et seq*. The Write-Your-Own Program (hereinafter the "WYO Program") allows private insurance companies to issue flood insurance policies in their own name. 44 C.F.R. §§61.13 & 62.23. Participating companies are known as Write-Your-Own Companies (hereinafter "WYO Company"). In this case, Plaintiffs acknowledge that they purchased their flood insurance policy from Farmers. SUMF 4. While Farmers acknowledges that they are the WYO Program carrier that issued the Standard Flood Insurance Policy (SFIP). <u>See Disclosure of Corporate Interests</u>, Docket No. 4, Filed 4/18/2013. Defendant admits that he is the agent that procured Plaintiffs' SFIP. SUMF 39. Therefore, Farmers, as a carrier participant in the NFIP, is the WYO Company who issued the SFIP to Plaintiffs utilizing the WYO Program.

**2. Plaintiffs' Policy is a Standard Flood Insurance Policy containing the exact same terms and conditions as prescribed by Federal law.**

Flood insurance policies issued by WYO Companies must contain the exact same terms and conditions of the SFIP found in 44 C.F.R. Pt. 61, App. A(1). 44 C.F.R. §§61.4(b), 61.3, 61.13(d), (e), 62.23(c). Those terms and conditions cannot be varied by WYO Companies without the express written consent of the Federal Insurance Administrator. 44 C.F.R. §§61.4(b), 61.13(d) & (e), 62.23(c) & (d). In this case, Plaintiffs do not claim to have the

express written consent of the Federal Insurance Administrator to alter any terms of their SFIP. It is thus indisputable that the insurance contract the Plaintiffs reference in their Petition is an SFIP, as is also clearly indicated by the Policy's Declarations Page in <u>Exhibit D</u>. Therefore, Plaintiffs' SFIP contains the exact same terms and conditions found in 44 C.F.R. Pt. 61, App. A(1).

### 3. Article IX of Plaintiffs' SFIP contains a preemption clause.

Plaintiffs' SFIP contains a preemption clause found in Article IX, which was amended in 2000 to read as follows: "**What Law Governs**: This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq*.), and Federal common law." 44 C.F.R. Pt. 61, App. A(1), Art. IX. The Supreme Court has explained that state law is preempted by federal law in three circumstances: (1) when Congress has clearly expressed an intention to do so ("express preemption"); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"); and (3) when a state law conflicts with federal law ("conflict preemption"). <u>See English v. General Electric Company</u>, 496 U.S. 72, 78-79 (1990).

### 4. Plaintiffs' Missouri contract law and vexatious refusal claims are preempted by NFIP provisions governing contract law claims.

Turning to Count I, Plaintiffs sue Defendant individually, as well as Farmers for breach of contract and vexatious refusal to pay under Missouri state law. SUMF 2. The NFIP specifically allows the SFIP policyholder to sue for breach of contract. <u>See</u> 42 U.S.C. §§4053, 4072. Nowhere in Plaintiffs' Petition do they cite FEMA regulations, NFIP provisions, or federal common law that could possibly indicate they are suing Defendant for breach of contract and vexatious refusal under Federal law. SUMF 1. Further, Plaintiffs filed their petition in the

19

state court of Cass County, Missouri.  Id.  In other words, Plaintiffs bring Missouri claims for the alleged breach and vexatious refusal to pay.  Plaintiffs' own understanding of this case is that by settling with Farmers for $26,882.67, they would no longer have to "deal with the Federal" aspects of this case.  SUMF 63.  Plaintiffs' understanding is incorrect.

The Eighth Circuit is in agreement with the Eleventh Circuit in holding that the plain language of Article IX contained in Plaintiffs' SFIP reflects a clear intent to preempt claims under state law.  Gunter v. Farmers Ins. Co., Inc., 736 F.3d 768, 772 (8th Cir. 2013); Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1344 (11th Cir. 2007).  Again, Congress provided an avenue for NFIP participants to sue for breach of their SFIP with federal statutes.  See 42 U.S.C. §§4053, 4072.  Said statutes do not give authority for Plaintiffs to sue for breach of contract under Missouri state law.  Id.  Said statutes do not even afford Plaintiffs the right to sue Defendant individually for breach of contract.  Id.  Nor, do said statutes mention "vexatious refusal," let alone confer a right for a claimant to sue for vexatious refusal.  Id.  Therefore, Plaintiffs breach of contract and vexatious refusal claims as plead in the Petition under Missouri state law are expressly preempted.

**5. Plaintiffs' Missouri tort law claim for negligent misrepresentation is preempted by Federal law.**

Unlike the contract law and vexatious refusal state claims which are expressly preempted by federal law (42 U.S.C. §§4053, 4072), the negligence claim requires a more detailed analysis because in Missouri state court, when a policyholder sues an insurance agent for professional negligence, there is a distinction between negligent procurement of a policy and negligent adjustment of a claim.  Plaintiffs' Petition is difficult to decipher regarding the nature of the negligence claim in Count II.  On the one hand, it appears Plaintiffs refer to representations Defendant made in his conversations with Ms. Pittman during the procurement of the policy.

20

SUMF 14.  On the other hand, it appears Count II refers to representations Defendant made during adjustment of the claim.  Id.  This Court should examine both theories and decide that Count II for negligence is preempted by federal law in either instance.

### a.  Negligent Procurement: Precluded by Conflict Preemption

The Eighth Circuit and Missouri Federal District Courts have not yet decided if state law procurement claims are preempted.  Admittedly, authorities are split as to whether an extra-contractual claim of negligent procurement is precluded.  Representative of the district court cases concluding that state law procurement claims are preempted by federal law is Moffett v. Computer Science Corp., which provides a detailed analysis of the NFIP, its implementing regulations, and case law and holds that a state law fraud claim against an adjuster related to procurement is preempted by conflict preemption.  457 F.Supp.2d 571, 588 (D.Md. 2006) (J. Messitte). [3]  We respectfully request this Court hold that extra-contractual claims for negligent procurement are preempted by federal law for the following reasons.

First, by mandate of the NFIP and FEMA regulations, WYO Companies deposit SFIP premiums in the United States Treasury and pay SFIP claims and litigation costs with federal money.  See 42 U.S.C. §§4017(a),(d); 44 C.F.R. §§62.23(g), (i)(6), (i)(9).  This means that federal funds are at stake whether the policy holder brings a contract or extra-contractual claim.  The central purpose of the NFIP is to reduce fiscal pressure on federal flood relief efforts.  C.E.R.1998, Inc. v. Aetna Cas. and Sur. Co., 386 F.3d 263, 270 (3rd Cir. 2004).

Second, even if federal funds were not at stake, the allowance of procurement claims could decrease the willingness of insurance companies to participate in the NFIP if litigation

---

[3] Contra, Reeder v. Nationwide Mut. Fire Ins. Co., 419 F.Supp.2d 750, 763 (D.Md. 2006) (J. Bennett) (footnote omitted) (holding "[S]tate tort law claims for negligence, negligent misrepresentation, fraud and deceit are not preempted by federal flood insurance law."); Campo v. Allstate, 562 F.3d 751, 758 (5th Cir. 2009) ("FEMA has expertise in drafting regulations that explicitly preempt state law, and yet in this instance chose to confine the plain language of its preemption to handling.").

costs were not reimbursed by federal funds, which could drive a higher price for flood insurance. C.E.R. 1998, Inc., 386 F.3d at 270.

Third, "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law." Heckler v. Community Health Servs., 467 U.S. 51, 63 (1984). In this case, Ms. Pittman never read her SFIP. SUMF 47. This case could have been avoided had Ms. Pittman read her SFIP and knew that only certain contents were covered in the basement. See SUGGESTION (F)(3)(a), infra.

Fourth, because procurement claims could not be asserted against FEMA itself, who is the only other seller of flood insurance besides WYO Program carriers, different rules would apply depending on whether the SFIP was purchased from FEMA directly, or a WYO Program carrier. Peal v. North Carolina Farm Bureau Mut. Ins. Co., Inc., 212 F.Supp.2d 508, 516-7 (E.D.N.C. 2002).

Fifth, given the differences in state consumer protection statutes, "WYO companies might be more willing to issue flood insurance policies in some states and less willing in others." Peal, 212 F.Supp.2d at 517.

Sixth, even assuming FEMA did not reimburse procurement claims, WYO companies would likely err on the side of overpaying claims, in an effort to insulate themselves from potential liability. See Peal, 212 F.Supp.2d at 517 (discussing reasons that bad faith claims are precluded by the federal scheme). This would again defeat FEMA's stated objective of providing low cost flood insurance to the people.

For all these reasons, Defendant asks this Court to hold that to the extent Count II is a claim for negligent procurement, it is conflict preempted as a matter of law.

### b. Negligent Adjustment: Preempted by Express and Conflict Preemption

Unlike a claim for negligent procurement, Article IX explicitly encompasses negligent adjustment claims because the clause governs "all disputes arising from the handling of any claim under the policy." 44 C.F.R. Pt. 61, App. A(1), Art. IX. Moreover, the Eighth Circuit recently addressed negligent adjustment claims and held that such claims are expressly preempted by Federal law. In <u>Gunter v. Farmers Ins. Co., Inc.</u>, the court held that Article IX demonstrates a clear intent to preempt state claims that arise from the "handling" of a claim under the SFIP. 736 F.3d 768, 772 (8th Cir. 2013). The Missouri Federal District Courts have not addressed whether negligent procurement claims are expressly preempted. We respectfully request this Court to follow the holding in <u>Gunter</u> and hold that Count II is precluded by federal law, to the extent it refers to negligent adjustment, for the following reasons.

First, from the beginning, Congress provided that the "original exclusive" jurisdiction for actions on SFIP claims is in federal court. 42 U.S.C. §4072. All actions arising out of the payment, investigation or adjustment of an SFIP claim must be heard in federal court. <u>See Van Holt v. Liberty Mut. Fire Ins. Co.</u>, 163 F.3d 161, 167 (3rd Cir. 1998).

Second, Congress has made clear that only the federal Executive Branch may set the rules that govern the adjusting of flood claims. 42 U.S.C. §4019. The SFIP's themselves are interpreted and governed under Federal law. <u>Flick v. Liberty Mut. Fire Ins. Co.</u>, 205 F.3d 386, 390 (9th Cir. 2000), <u>cert denied</u>, 531 U.S. 927 (2000). Congress expressly legislated to defeat state court jurisdiction over the National Flood Insurance Act (hereinafter "NFIA") and gave all rule-making authority to FEMA, therefore all NFIA jurisdictional and rule-making statutes plainly express an intent by Congress that all control over the NFIP remain exclusively within the Executive and Judicial branches of the federal government. <u>See</u> 42 U.S.C. §§ 4013, 4017, 4019 (no rule making authority in the 50 state insurance commissioners).

23

Third, the SFIP provides in Article IX that "all disputes <u>arising from the handling of any claim</u>" are governed by federal law. 44 C.F.R. Pt. 61, App. A(1), Art. IX (emphasis added). Therefore, if Count II refers to misrepresentations the Defendant made after the flood, this is clearly during the claims handling process.

Fourth, if the Court were to conclude that Plaintiffs' negligent adjustment claim was not precluded by express preemption, then it should still conclude that Plaintiffs' state law claims are preempted by conflict preemption. Because even before the 2000 amendment added the express preemption clause, the Third, Fifth, and Sixth Circuits held that state law actions regarding "claims handling" were preempted as a matter of conflict preemption.[4] Numerous cases at the District Court level agreed.[5]

Therefore, to the extent Count II refers to negligent adjustment, the claim is "conflict preempted" if not "expressly preempted" and Defendant is entitled to summary judgment.

**D. Plaintiffs Failed to Timely Institute their Claims against Defendant because they did not File their Action within One Year of the Denial of their Claim**

Plaintiffs may argue that even though the Petition cites no federal authority, they nonetheless sufficiently plead a Federal contract claim, not a Missouri contract claim in Count I. In this instance, and assuming Plaintiffs have standing, Defendant is still entitled to summary judgment as a matter of law regarding Count I because Plaintiffs neglected to file suit against Defendant within one year of the denial of their claim as the contract requires.

The SFIP contains its own provisions regarding the time a claimant has to file suit:

---

[4] <u>C.E.R. 1988, Inc.</u>, <u>supra</u>; <u>Gibson v. Am. Bankers Ins. Co.</u>, 289 F.3d 943, 948 (6th Cir. 2002); and <u>Wright v. Allstate</u>, 415 F.3d 384, 390 (5th Cir. 2005).
[5] <u>Peal</u>, <u>supra</u>; <u>Neill v. State Farm Fire and Cas. Co.</u>, 159 F.Supp.2d 770, 777 (E.D. Penn.); <u>Scherz v. South Carolina Ins. Co.</u>, 112 F.Supp.2d 1000, 1009 (C.D. Cal. 2000); <u>Novikov v. Allstate Ins. Co.</u>, 2001 WL 880852, p.4 (E.D.Cal. 7/11/01); <u>3608 Sounds Ave. Condo. Assoc. v S. Carolina Ins. Co.</u>, 58 F.Supp.2d 499, 503 (D.N.J. 1999); and <u>Durkin v. State Farm Mut. Ins. Co.</u>, 3 F.Supp.2d 724, 728 (E.D. La. 1997).

> **Suit Against Us**: If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of the loss. This requirement applies to any claim that you may have under the policy and to any dispute that you may have arising out of the handling of any clam under the policy.

44 C.F.R. Pt. 61, App. A(1), Art. VII(R). In <u>Mancini v. Redland Ins. Co.</u>, the Eight Circuit held that the SFIP is "more than a contract: it is also a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood-insurance funds may be disbursed to eligible policy holders." 248 F.3d 729, 733 (8th Cir. 2001). Viewing the SFIP in this light, the requirements of the above quoted provision is actually a regulation of FEMA.

In this case, Plaintiffs' loss occurred on the date of the flood event June 4, 2008. SUMF 7. Farmers denied Plaintiffs' claim on October 17, 2008. SUMF 56. Therefore, according to the SFIP, Plaintiffs had to file suit on any claim "under the policy" on or before October 17, 2009. Plaintiffs filed suit on March 11, 2013, clearly after said deadline. SUMF 1. Accordingly, to the extent Plaintiffs argue they sufficiently plead a federal contract claim, Defendant is entitled to summary judgment as a matter of law.

Article VII(R) also applies to any dispute that Plaintiffs have arising out of "the handling of any clam under the policy." 44 C.F.R. Pt. 61, App. A(1), Art. VII(R). Therefore to the extent the Court rules Count II refers to negligent adjustment, Plaintiffs are time barred by the terms of the policy because a negligent adjustment claim arises out of "handling" a claim. <u>See</u> SUGGESTION (C)(5)(b), <u>supra</u>.

## E. Plaintiffs' Proof of Loss was Untimely and Incomplete because Plaintiffs did not submit the Proof of Loss within 60 days and Admitted it was Incomplete

Even if this Court determines that Plaintiffs have standing, sufficiently plead a Federal contract law claim in Count I, and filed their claim timely under Federal law, Defendant is still

entitled to summary judgment as a matter of law as to Count I because Plaintiffs did not submit a timely or complete proof of loss as the contract requires. The Eighth Circuit held that the proof of loss provision in the SFIP must be strictly construed. <u>Mancini</u>, 248 F.3d at 733. Federal regulations require an insured to submit a proof of loss within sixty days of the loss. 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(4). This proof of loss is defined as "your statement of the amount you are claiming under the policy signed and sworn by you" and must include detailed repair estimates. <u>Id</u>. In preparing the proof of loss, an insured is to use his or her own judgment concerning the amount of loss and must justify that amount. <u>Id</u>. at Art. VII(J)(5).

The proof of loss requirement has been a federal law governing all claims against NFIP policies for decades. Throughout those decades, there has developed a nationally uniform and now well-settled line of case law that clearly provides that if the insured/NFIP participant has failed to present their claim to their WYO Company with a proof of loss that is timely, complete, sworn and properly documented, then the claim is not payable absent a waiver of the rule from FEMA itself.[6]

In this case, Plaintiffs' loss occurred on June 4, 2008. SUMF 7. Under Art. VII(J)(4), Plaintiffs had to file their proof of loss on or before August 3, 2008. Plaintiffs admit that there is no proof of loss dated on or before August 3, 2008, that is sworn, complete (meaning it supplies all information listed in SFIP Art. VII(J)(4)), and which seeks the funds that are now being sought in this lawsuit. SUMF 59. Plaintiffs executed their proof of loss July 2, 2012, almost four years after the 60 day deadline had passed. SUMF 58.

---

[6] <u>Mancini, supra</u>; <u>Phelps v. FEMA</u>, 785 F.2d 13 (1st Cir. 1986); <u>Suopys v. Omaha Prop. & Cas. Ins. Co.</u>, 404 F.3d 805 (3rd Cir. 2004); <u>Dawkins v. Witt</u>, 318 F.3d 606 (4th Cir. 2003); <u>Gowland v. Aetna Cas. & Surety Co.</u>, 143 F.3d 951 (5th Cir. 1998); <u>Evanoff v. Standard Fire Ins. Co.</u>, 534 F.3d 516 (6th Cir. 2008); <u>Flick, supra</u>; and <u>Shuford, supra</u>.

26

The proof of loss was overdue and also not complete. When Plaintiffs executed the proof of loss, they disagreed with the claim amount referenced in Line 9 of the document, yet still signed the proof of loss knowing it was incorrect. SUMF 61. Plaintiffs wanted to settle with Farmers for the amount claimed in the proof of loss and then recover more for their losses against Defendant under the contract. SUMF 62.

Specifically, Plaintiffs' net amount claimed in their proof of loss was $26,882.67. SUMF 60. Ms. Pittman admits that that when she and her husband signed the proof of loss document, their loss was actually more than $26,882.67. SUMF 61. In fact, this discrepancy between the loss amount Plaintiffs claimed in their proof of loss, or $26,882.67, and the Plaintiffs' alleged actual loss from the flood, is the very amount Plaintiffs seek to gain from Defendant in this lawsuit.

But, if Plaintiffs wanted to recover more for their losses under the contract then the $26,882.67 they signed and swore to in the executed proof of loss, they needed to comply with the proof of loss requirement. Plaintiffs must show actual compliance with their proof of loss requirement. It is not sufficient for Plaintiffs to show they substantially complied or that the insurer suffered no prejudice. Mancini, 248 F.3d at 734. Even if Plaintiffs had submitted a supplemental proof of loss to account for their discrepancy, neither the SFIP nor FEMA regulations allow for the submission of any supplemental claim after the proof of loss deadline has passed.

The fact that any material false statement to a federal agency is punishable as a crime under 18 U.S.C. §1001 and that the proof of loss must be sworn by the claimants is further proof of the significance of executing a timely and accurate proof of loss. Ultimately, Plaintiffs' proof

of loss was untimely, incomplete, and insufficient as a matter of law and Defendant is entitled to summary judgment with respect to Count I breach of contract.

### F. Plaintiffs' State Law Claims Fail under Missouri Law

Lastly, even if Plaintiffs' claims of breach of contract, vexatious refusal, and negligent misrepresentation were not preempted by federal law, Plaintiffs would nevertheless still be required to succeed against Defendant under Missouri law. Given the uncontroverted facts, Plaintiffs fail to do so as a matter of law on each of their state law claims and therefore the Court should grant summary judgment for Defendant.

#### 1. Defendant was not a party to the contract and the contract was not breached.

Plaintiffs' claim for breach of contract fails for two reasons: Defendant was not a party to the contract and even if he was, the contract was not breached. For Plaintiffs to state a claim against Defendant for breach of contract, they must allege: (1) the making and existence of a valid and enforceable contract between Plaintiffs and Defendant; (2) the right of Plaintiffs and the obligation of Defendant under the contract; (3) a violation of the contract by Defendant; and (4) damages resulting to Plaintiffs from the breach. Trotter's Corp. v. Ringleader Rests., Inc., 929 S.W.2d 935, 941 (Mo. App. E.D. 1996) citing Chase Elec. Co. v. Acme Battery Mfg. Co., 798 S.W.2d 204, 208 (Mo. App. E.D. 1990).

First, the contract is between Farmers and Plaintiffs. Defendant is an agent of Farmers, and "an agent for a disclosed principle is not a party to a contract and is not liable for its nonperformance." State ex rel. William Ranni Associates, Inc. v. Hartenbach, 742 S.W.2d 134, 140 (Mo. banc 1987). In this case, Ms. Pittman understood Defendant to be an agent of Farmers. SUMF 26. Defendant, as Farmers' agent, is not liable for lawful acts performed within the scope

Case 4:13-cv-00380-DGK   Document 44   Filed 03/24/15   Page 28 of 37

of its authority for a disclosed principal.  Town & Country Appraisals, LLC v. Hart, 244 S.W.3d 187, 189 (Mo. App. E.D. 2007).

Second, even if Defendant was a party to the contract, there was no breach of the contract to the extent Plaintiffs claim all of their contents in the basement should have been covered.  The SFIP specifically states the exact contents that are covered in a basement:

> Coverage for items . . . in a basement, regardless of the zone is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
>   a.  Air conditioning units, portable or window type;
>   b.  Clothes washers and dryers; and
>   c.  Food freezers, other than walk-in, and food in any freezer.

44 C.F.R. Pt. 61, App. A(1), Art. III(B)(3).  In this case, Farmers' refusal to pay for contents in the basement of the Property not specifically enumerated in Art. III(B)(3), is pursuant to the contract, not a breach.  To allow Plaintiffs to pursue remedies under the contract would hold the Defendant liable for provisions that simply do not exist.

Third, the contract could not have been breached because Plaintiffs collected insurance claim funds under the contract.  Mr. Cali, the adjustor examined the property and offered a check to Plaintiffs for their flood damages for an amount over $21,000.  SUMF 51.  Farmers' check of $3,287.48, Exhibit J, was a check for the damage to contents claimed in Plaintiffs' proof of loss. Plaintiffs received and cashed this check for their contents loss under the SFIP.  SUMF 70. Farmers also issued a check to Plaintiffs and Countrywide in the amount of $23,565.19.  SUMF 67.  Plaintiffs would have also cashed the check for $23,565.19, for building coverage, but for Bank of America, who now owns the Property refusing to endorse the check.  SUMF 71.  For all these reasons, the contract claim against Defendant in Count I fails under Missouri law.

**2.  Vexatious refusal is not applicable to Defendant.**

29

Plaintiffs' state law claim of vexatious refusal against Defendant in Count I also fails as a matter of law. Under Missouri law, an action against an insurance company for vexatious refusal to pay benefits under an insurance policy exists "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse[.]" §375.420, RSMo (2000). But, §375.420 only applies to insurance companies. <u>Perkins v. Fleetline, Inc.</u>, No. 4:96CV2004 FRB, 1998 WL 35178378, p.4 (E.D.Mo. July 8, 1998) (granting summary judgment on a vexatious refusal to pay claim because defendant was not an insurance company or a commercial surety); <u>Mo. Prop. & Cas. Ins. Guar. Ass'n v. Pott Indus.</u>, 971 S.W.2d 302, 306 (Mo. banc 1998) (finding that a company that assumed certain "rights, duties, and obligations" of an insolvent insurer, was not an insurance company and thus could not be liable under a vexatious refusal to pay cause of action). Defendant is clearly not an insurance company as he is an agent of Farmers.

Even if Plaintiffs were able to show that §375.420, RSMo applied to an individual defendant, to establish their claim for vexatious refusal to pay, Plaintiffs would have to prove that: (1) they had an insurance policy with Defendant, (2) Defendant refused to pay under the policy, and (3) Defendant's refusal was without reasonable cause or excuse. <u>Dhyne v. State Farm Fire & Cas. Co.</u>, 188 S.W.3d 454, 457 (Mo. banc 2006). But as explained in SUGGESTION (F)(1), <u>supra</u>, Defendant and Plaintiffs did not have a contract. Plaintiffs had a contract with Farmers.

If this Court were to rule that Defendant and Plaintiffs had a contract, Plaintiffs' vexatious refusal claim would still fail. To recover under this section, Plaintiffs must show that the "insurer's refusal to pay was willful and without reasonable cause as it would appear to a reasonable and prudent person." <u>Thornburgh Insulation, Inc. v. J.W. Terrill, Inc.</u>, 236 S.W.3d

30

651, 657 (Mo. App. E.D. 2007) quoting Smith ex rel. Stephan v. AF & L Ins. Co., 147 S.W.3d 767, 778 (Mo. App. E.D. 2004). Where "the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense" there is no valid claim for vexatious refusal to pay. Wood v. Safeco. Ins. Co. of Am., 980 S.W.2d 43, 55 (Mo. App. E.D. 1998). Missouri courts construe this statute strictly because it is penal in nature. Thornburgh, 236 S.W.3d. at 657 citing Smith, 147 S.W.3d at 778. As explained in SUGGESTION (E), supra, Farmers denial of coverage was reasonable because Plaintiffs did not comply with the proof of loss requirement in the SFIP. And, as explained in SUGGESTION (F)(1), supra, Farmers denial of coverage with respect to any contents not specifically listed in the SFIP basement provision was reasonable because those contents were not covered under the policy. For all these reasons the vexatious refusal claim in Count I against Defendant fails as a matter of Missouri law.

**3. Plaintiffs' negligent misrepresentation claim fails as a matter of law.**

As mentioned in SUGGESTION (C)(5), supra, Plaintiffs' petition is unclear as to whether Count II's negligence claim relates to representations Defendant made during the procurement of the insurance or adjustment of the claim, but in either case, Plaintiffs cannot succeed as a matter of Missouri law.

**a. Negligent Procurement: Defendant procured contents coverage; Defendant procured the only policy available; Defendant did not breach his duty**

Plaintiffs plead that Defendant was negligent in two ways. First, Plaintiffs claim that Defendant "represented to the plaintiffs that he had sold them a policy which covered a loss due to flooding to personal property contents." SUMF 21. But, Defendant did in fact sell Plaintiffs a policy which covered a loss to contents due to flooding. In order prevail on a claim of negligent

31

failure to procure insurance, the plaintiff must plead and prove that (1) the agent agreed to procure, for compensation, insurance from the insurance company, (2) the agent failed to procure the agreed upon insurance and, in so doing, failed to exercise reasonable care and diligence, and (3) as a result, the plaintiff suffered damages. Busey Truck Equipment v. American Family Mut. Ins. Co., 299 S.W.3d 735, 738 (Mo. App. E.D. 2009); Haynes v. Edgerson, 240 S.W.3d 189, 195 (Mo. App. W.D. 2007).

In this case, it is undisputed that Defendant sold Plaintiffs a flood policy which covered a loss to contents because Plaintiffs' SFIP contained contents coverage for up $100,000. SUMF 42. And, even though only certain contents are covered in an enclosed basement pursuant to Art. III(B)(3), the Policy had contents coverage. See SUGGESTION (F)(1), supra. The Policy declarations clearly indicate that, "Coverage Limitations May Apply, Refer to your Standard Flood Insurance Policy for details." SUMF 43. Further, it is undisputed that Ms. Pittman was aware of the amount of coverage Plaintiffs purchased. SUMF 36. Ms. Pittman admits that Defendant informed her of coverage limits of $250,000 for the building and $100,000 for the contents. SUMF 35. Ms. Pittman reviewed and was satisfied with the coverage limits of the SFIP. SUMF 37. Ms. Pittman also reviewed the declarations page of her SFIP as shown in Exhibit D. SUMF 44. Ms. Pittman had a copy of the SFIP, but never read it. SUMF 45, 47.

Second, the Plaintiffs plead that Defendant "negligently failed to secure coverage for the plaintiffs with the Farmers Fire Insurance Exchange for personal property/contents coverage to flooding." SUMF 21. But, an applicant cannot recover for an agent's failure to obtain insurance coverage unless he establishes such coverage was available. Russell v. Reliance Ins. Co., 672 S.W.2d 693 (Mo. App. S.D. 1984). Defendant secured the only flood insurance policy available, the SFIP. SUMF 39-41. Farmers acting as a WYO Company issued the Policy, which must

contain the exact same terms and conditions of the SFIP found in <u>Exhibit E</u>. <u>See</u> SUGGESTION (C)(2), <u>supra</u>. Plaintiffs, as a matter of law, are unable to establish that any other policy would have covered contents in their basement not listed specifically in Art. III(B)(3) of their SFIP.

Lastly, Defendant was not negligent because he did not breach his duty to Plaintiff. Whether a duty exists is purely a question of law. <u>Aaron v. Havens</u>, 758 S.W.2d 446, 447 (Mo. banc 1988). Missouri courts have established that a broker or agent who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care, and diligence in obtaining the requested insurance and may be sued in tort for negligent failure to procure that insurance. <u>Busey Truck Equipment, Inc.</u>, 299 S.W.3d at 738, citing <u>Parshall v. Buetzer</u>, 121 S.W.3d 548, 554 (Mo. App. W.D. 2003). Generally, the duty of an agent ends when he obtains the requested insurance or timely tells the applicant that it is not available. <u>See Emerson Electric Co. v. Marsh & McLennan Companies</u>, 362 S.W.3d 7, 13 (Mo. banc 2012); <u>Hecker v. Missouri Property Ins. Placement Facility</u>, 891 S.W.2d 813, 816 (Mo. 1995). A broker fulfills his duty by bringing the insurance company and the insured together in an insurance contract as the insured has requested. <u>Bucksaw Resort, LLC v. Mehrtens</u>, 414 S.W.3d 39, 43 (Mo. App. W.D. 2013).

Defendant's duty ended when, as Ms. Pittman admits in her own deposition testimony, she requested flood insurance and Defendant obtained flood insurance as requested. SUMF 38. The Defendant fulfilled his duty when Plaintiffs purchased an insurance policy from Farmers, Policy #87-0400-2464-2007, insuring them and the Property against loss from a flood July 6, 2007 through July 6, 2008. SUMF 4, 5. Therefore to the extent that Count II refers to negligent procurement, the claim fails as a matter of Missouri law.

> **b. Negligent Adjustment: Defendant's representations were true; Defendant exercised reasonable care; Plaintiffs cannot show proximate cause; Defendant's statements were not the cause of pecuniary loss**

Plaintiffs' plead that Ms. Pittman had two conversations with the Defendant post-flood which could amount to negligent misrepresentation. SUMF 48. In the first conversation, Plaintiffs plead that after the flood they "notified Yoder by phone who orally confirmed to Cathy Pittman that the policy protected plaintiffs against any resulting loss." SUMF 8. In the second conversation, after insurance adjuster Peter Cali told Ms. Pittman that she did not have contents coverage, "Cathy Pittman immediately contacted Yoder and Yoder, as agent for Farmers, again stated to Cathy Pittman that the contents were a covered loss." SUMF 10.

To make a submissible case of negligent misrepresentation for a pecuniary loss, Missouri law requires a plaintiff to establish: (1) the speaker supplied information in the course of his or her business because of some pecuniary interest, (2) that was false, (3) without exercising reasonable care or competence in obtaining or communicating this information, (4) for the guidance of a limited group of persons in a particular business transaction, (5) and the listener justifiably relied on the information, (6) and, as a result, suffered a pecuniary loss. Richey v. Philip, 259 S.W.3d 1, 15 (Mo. App. W.D. 2008) (internal citation omitted). Plaintiffs cannot show elements (2), (3), (5), and (6) above as a matter of law.

First, Plaintiffs simply cannot show that the statements by Defendant were in any way false. Defendant simply read the coverage limits of the Policy contained in the declarations page. SUMF 15. The Policy limits are contained in the declarations page of Ms. Pittman's SFIP. SUMF 42. Policy limits that she had already reviewed to her satisfaction. SUMF 37, 44.

Second, if the Court were to find that the statements by Defendant were misrepresentations, Defendant exercised reasonable care or competence by communicating that contents were covered. Defendant simply read the coverage limits of the Policy contained in the declarations page. SUMF 15. The declarations page explicitly states the contents coverage limit

34

of $100,000. SUMF 42. Plaintiffs have not put forth any facts that would show that Defendant did not exercise reasonable care or competence in communicating the policy limits to the Plaintiffs.

Third, even if the Court were to find that Defendant did not exercise reasonable care or competence in his statements to Plaintiffs, the Plaintiffs did not rely on the statements and therefore Defendant's alleged misrepresentations were not the proximate cause of Plaintiffs' alleged loss. Plaintiffs did not allege they failed to take any action to seek coverage for their contents based upon Defendant's alleged post-loss statements. Plaintiffs do not allege facts that if proven, would establish Plaintiffs took or refrained from taking any action in reliance upon the alleged misrepresentations by Defendant.

Fourth, even assuming arguendo, Plaintiffs alleged sufficient facts to establish they relied upon Defendant's statement, Plaintiffs claim still would fail. Plaintiffs are required to set forth facts, which if proven, would establish they suffered a pecuniary loss due to their reliance on Defendant's statement. The fact is Plaintiffs' pecuniary loss was caused by the flood. Plaintiffs had contents coverage under their SFIP. SUMF 42, 46. However, the SFIP only covers certain contents stored in an enclosed basement. See SUGGESTION (F)(1), supra. Plaintiffs simply failed to file a timely or complete proof of loss. See SUGGESTION (E), supra. This failure resulted in Farmers denying Plaintiffs' claim on October 17, 2008, not statements Defendant made. SUMF 56. Therefore to the extent that Count II refers to negligent adjustment, the claim fails under Missouri law.

Respectfully Submitted,

_____/s/ Jeffrey J. Brinker_____

Aaron Mandel, #39692MO
Jeffrey J. Brinker, #30355MO*
Michael C. Bowgren, #57450MO*
Brinker & Doyen, L.L.P.
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
314-863-6311
Fax: 314-863-8197
jbrinker@brinkerdoyen.com
mbowgren@brinkerdoyen.com
amandel@brinkerdoyen.com
**Attorneys for Defendant Colby Yoder**
*Admitted *Pro Hac Vice*

36

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on the 24th day of March, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Kenneth C. Hensley
Wyatt Z. Roberts
Hensley Law Office
401 West 58 Highway
P. O. Box 620
Raymore, MO 64083
Phone: 816-322-4466
hensleylawoffice@gmail.com
***Attorneys for Plaintiff***

W. James Foland
John M. Brigg
Foland, Wickens, Eisfelder,
Roper & Hofer, P.C.
911 Main Street, Suite 105
Kansas City, MO  64105
Phone: 816-472-7474
jfoland@fwpclaw.com
jbrigg@fwpclaw.com
***Attorneys for Defendant Farmers Fire***
***Insurance Exchange***

                        */s/ Jeffrey J. Brinker*