IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CATHERINE LYNN PITTMAN et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:13-CV-380-DGK |
| | ) | |
| FARMERS FIRE INSURANCE | ) | |
| EXCHANGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANT YODER'S MOTION FOR SUMMARY JUDGMENT

This case is about a couple that bought an insurance policy, believed it said one thing, then found out too late that they were wrong. Defendant Colby Yoder ("Yoder"), an insurance agent with Defendant Farmers Fire Insurance Exchange ("Farmers"), sold a flood insurance policy to Plaintiffs Catherine Lynn Pittman ("Cathy Pittman") and Troy Vernon Pittman (collectively, "the Pittmans"). The Pittmans claim Yoder misrepresented that their policy would cover all contents of their basement from flood damage. After floodwaters inundated their basement and ruined the items they kept there, the Pittmans read their policy for the first time and learned that it actually excluded most basement contents.

Yoder now moves for summary judgment on all claims against him (Doc. 44). As explained below, the Court holds that: Yoder has waived his real party in interest challenge; the Pittmans have abandoned their breach of contract and vexatious refusal to pay claims; there is no genuine dispute over facts material to the negligent procurement claim; federal law does not preempt the Pittmans' negligent misrepresentation claim; and there is a genuine dispute over

facts material to that claim.  Therefore, Yoder's motion is GRANTED IN PART and summary judgment is granted in his favor on all but the negligent misrepresentation claim.

**Standard**

A moving party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding whether the movant has met this standard, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  *Chavis Van & Storage of Myrtle Beach, Inc. v. United Van Lines, LLC*, 784 F.3d 1183, 1193 (8th Cir. 2015).

The movant must identify portions of the record that demonstrate the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(a).  If the movant does so, then the nonmovants must respond by submitting evidentiary materials establishing the existence of a genuine dispute surrounding an element essential to their case.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  To carry this burden, the nonmoving parties must specifically controvert any given fact set forth in the movant's brief, or else those facts are deemed admitted.  L.R. 56.1(a).  The nonmoving parties must also "refer specifically to those portions of the record upon which [they] rel[y]."  *Id.*

In their suggestions opposing summary judgment, the Pittmans do not specifically controvert most of Yoder's facts, so the Court deems all of those facts admitted.  *See id.*  They do attach a single affidavit from Cathy Pittman to support their version of the facts, but fail to tie the

affidavit to any specific facts they dispute. This violates Local Rule 56.1(a). As a remedy, Yoder urges the Court to strike the affidavit. While the Court strictly enforces Local Rule 56.1(a), *see, e.g.*, *United States v. Brice*, No. 3:10-CV-5062-DGK, 2012 WL 1078191, at *1 (W.D. Mo. Mar. 30, 2012), because the Pittmans offer only a simple, three-page affidavit as additional facts, the Court has no difficulty figuring out the exact source of the few facts they advance. Therefore, their transgression is harmless and the Court declines to strike the affidavit.

**Background**

For purposes of deciding the motion, the Court finds the relevant facts to be as follows. This dispute concerns flood insurance, an area "governed to some extent by rules quite different from those that would apply in a normal insurance dispute." *McCarty v. S. Farm Bureau Cas. Ins. Co.*, 758 F.3d 969, 972 (8th Cir. 2014). Flood insurance policies are not an inherently lucrative product for insurance companies. 11 Steven Plitt et al., *Couch on Insurance* § 153:51 (3d ed. Supp. 2014). Floods often evade reliable prediction, recur frequently in some areas, and wreak extensive damage. *Id.* This led private insurance companies to refuse to offer flood insurance on flood-prone property. H.R. Rep. No. 90-786, at 4–5 (1967); *see* 42 U.S.C. § 4001(b)(1). Without an adequate flood insurance market serving these areas, the federal government was spending large sums of money on flood disaster aid. 42 U.S.C. § 4001(a).

To address this problem, in 1968 Congress enacted the National Flood Insurance Program ("NFIP"). 42 U.S.C. §§ 4001–4131. As amended, the NFIP charges the Federal Emergency Management Agency ("FEMA") with providing unified flood insurance coverage nationwide below actuarial rates. *Id.* § 4011(a).

Private sector property insurance companies may participate in the NFIP as so-called "Write-Your-Own" ("WYO") companies. *Id.* § 4071(a)(1); 44 C.F.R. §§ 61.13(f), 62.23–.24.

"In essence, the insurance companies serve as administrators for the federal program." *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 83 (1st Cir. 2013). WYO companies issue flood insurance policies in their own name and handle the adjustment, settlement, payment, and defense of all claims arising from those policies. 44 C.F.R. § 62.23(d). WYO companies deposit the premiums they collect into the U.S. treasury, 42 U.S.C. § 4017(d), and in return receive a commission based on claims paid, 44 C.F.R. pt. 62, app. A, art. III. The federal government, in turn, pays claims and the WYO companies' defense costs. 42 U.S.C. § 4017(a)(5), (d). The federal government also sets the terms of the policies by requiring the use of the Standard Flood Insurance Policy ("SFIP"), the terms of which cannot be varied without express permission from FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d).

It is through this program that the Pittmans came to buy a flood insurance policy. The Pittmans owned a single family home in Peculiar, Missouri, on property that abuts a river. In 2007, the river overflowed and almost flooded their basement. The Pittmans worried that a future flood would successfully reach their basement.

Cathy Pittman contacted Yoder, an insurance agent for Farmers, a WYO company. They discussed the Pittmans purchasing a flood insurance policy. Cathy Pittman specifically told Yoder that she wanted a flood insurance policy to cover the contents of her basement. She detailed the high value possessions she kept in the basement, including furniture, televisions, kitchen appliances, a computer, and hunting supplies.

Because the SFIP was the only flood policy available,[1] Yoder prepared to sell Cathy Pittman that policy. He asked her several questions to complete the SFIP application, including questions about her basement. Yoder said that he could procure a federal flood insurance policy

---

[1] This fact is undisputed for the purposes of this motion; the Court does not suggest that this is true as a matter of law.

that covered up to $250,000 for the house and $100,000 for its contents. He specifically promised that the policy would cover all of the contents of their home, including items in the basement. Cathy Pittman did not have a copy of the prospective policy in front of her during this conversation. The parties later executed the policy.

In June 2008, the river flooded the Pittmans' house and damaged some personal property in their basement. Farmers agreed to pay for structural damage and for most of the house's contents, but refused to pay for most items in the basement. Until this point, the Pittmans had never read their policy. They then learned that their policy, like all SFIPs and pursuant to federal regulations, specifically limited:

> Coverage for items of property. . . in a basement . . . to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:
>       a. Air conditioning units, portable or window type;
>       b. Clothes washers and dryers; and
>       c. Food freezers, other than walk-in, and food in any freezer.

44 C.F.R. pt. 61, app. A(1), art. III(B)(3). In other words, contrary to what Yoder had told Cathy Pittman over the phone, their policy did not cover most of the items in their basement.

The Pittmans formally submitted a claim, but Farmers decided that the claim was incomplete per the policy's terms and so could not be considered timely. They properly executed their proof of loss in July 2012, over four years after the flood. In the interim, the Pittmans filed for bankruptcy in 2010. *See In re Pittman*, No. 10-43319-CAN7 (Bankr. W.D. Mo. filed June 28, 2010).

## Analysis

Although Yoder denominates his motion as one for summary judgment, he really seeks two different forms of relief. First, he argues that the Pittmans' bankruptcy estate, not the

Pittmans themselves, are the real parties in interest, so the Court should dismiss their claims. Second, he argues that he is entitled to summary judgment on the claims.

**I. Yoder has waived his argument that the Pittmans are not the real parties in interest.**

Yoder first argues that the Pittmans have no right to bring their claims against him. When the Pittmans filed for bankruptcy, their causes of action passed to the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). Only the trustee of that estate has the right to enforce the cause of the action. Hence, Yoder maintains, the Pittmans "are not the real parties in interest" and so cannot prosecute this action (Doc. 44 at 16).

Federal Rule of Civil Procedure 17 requires an action to "be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). A real party in interest is "the person who, under governing substantive law, is entitled to enforce the right asserted." *Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins.*, 675 F.3d 1095, 1098 (8th Cir. 2012). In certain circumstances, the court may dismiss an action for failure to prosecute in the name of the real party in interest. Fed. R. Civ. P. 17(a)(3). A Rule 17 objection can be waived if not raised "with 'reasonable promptness' [or] in a timely or seasonable fashion." *Chi. & Nw. Transp. Co. v. Negus-Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir. 1977). In assessing timeliness, a court may consider whether the objecting party has been, or will be, prejudiced. *See id.*

Yoder's objection comes almost five years after the Pittmans filed for bankruptcy, and over two years after the Pittmans filed their lawsuit in state court. Yoder could have discovered much earlier in this litigation that the Pittmans were in bankruptcy proceedings and thus not entitled to enforce their action. *See RK Co. v. See*, 622 F.3d 846, 850–51 (7th Cir. 2010) (holding a Rule 17 objection was untimely where the defendant could have discovered the basis for his objection years earlier "by a simple search of Illinois's public records"). Moreover, this

lawsuit materially concerns the Pittmans, not the bankruptcy trustee, so the Court discerns no prejudice to Yoder by letting the Pittmans proceed without the trustee. *See Chi. & Nw. Transp. Co.*, 549 F.2d at 50 (finding no prejudice and concluding that "the nature of [the defendant's] objection goes to form, not substance"). Therefore, the Court holds that Yoder did not promptly raise this claim, and so has waived it. The Court declines to dismiss the Pittmans' claims on this basis.

Yoder alternatively describes his argument as one of standing, which asks whether "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). The principle of standing is distinct from the principle of real party in interest; unlike the former, the latter "does not impact the court's subject matter jurisdiction." *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 789–90 (11th Cir. 2014). It is significant whether Yoder's argument actually bears on standing, because subject-matter jurisdiction claims cannot be waived. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

Yoder challenges who is the proper plaintiff to litigate these claims: a real party in interest challenge. *See also Dunn*, 556 F. App'x at 789–90 (where a bankruptcy trustee argued that she had exclusive standing to prosecute the debtor's claims, classifying the trustee's challenge as one of real party in interest). His brief ignores the crux of a standing challenge: whether the Pittmans have any personal stake in this dispute. *See Summers*, 555 U.S. at 493. The essence of his argument implicates only real party in interest, and so the Court rejects Yoder's argument that his challenge is immune to waiver. *See Dunn*, 556 F. App'x at 789–90.

## II. Yoder is entitled to summary judgment on all but the negligent misrepresentation claim.

Yoder moves for summary judgment on all claims pled against him: breach of contract, vexatious refusal to pay, negligent procurement, and negligent misrepresentation.[2] As for the first two claims, the Pittmans concede in their brief that "actions for breach of contract and vexatious refusal to pay . . . cannot be asserted against Defendant Yoder" (Doc. 51 at 10 n.1). Therefore, the Court grants Yoder summary judgment on these claims.

Count II alleges that Yoder negligently failed to procure them insurance that covered the contents of their basement. A negligent procurement claim cannot stand where "there was no insurance that *could* be purchased insuring against the peril causing the loss." *Russell v. Reliance Ins. Co.*, 672 S.W.2d 693, 694 (Mo. Ct. App. 1984) (emphasis added). Here, the SFIP was the only flood insurance policy available, and it did not insure against floods damaging non-appliance contents in basements. Therefore, Yoder's alleged failure to procure the Pittmans a more inclusive flood insurance policy cannot be the proximate cause of their loss. *See id.* The Court grants Yoder summary judgment on this claim.

The real dispute here concerns the remaining claim in Count II, negligent misrepresentation. Yoder presents two arguments for why he is entitled to summary judgment on the negligent misrepresentation claim. First, he raises the affirmative defense of preemption, arguing that the federal flood insurance regulations preempt state tort law. Second, he argues that there is no genuine dispute of facts material to the merits of those claims.

---

[2] Count II of the Pittmans' complaint charges Yoder with "negligence," and offers misrepresentation and procurement as the two bases for this claim. Pet. ¶ 19(a)–(b) (Doc. 1-1 at 4). These are separate torts under Missouri law, yet the Pittmans lump them together in their brief as "negligent procurement and/or misrepresentation." *E.g.* (Doc. 51 at 13). The Court empathizes with Yoder that the Pittmans "struggle to characterize their own claim" (Doc. 52 at 6), but finds that the complaint gives sufficient notice of each tort such that both claims are pending.

### A. Because the NFIP and its regulations reflect no congressional concern for the liability of an insurance agent, the Pittmans' claim against Yoder for negligent misrepresentation is not impliedly preempted.

Yoder's first argument is that the NFIP and attendant FEMA regulations impliedly preempt the Pittmans' state law negligent misrepresentation claim. The Supremacy Clause of the United States Constitution preempts—that is, invalidates—any state law that conflicts with a federal law. *ONEOK, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595 (2015) (citing U.S. Const. art. VI, cl. 2). This doctrine, known as preemption, is multifarious. *E.g. id*. Relevant here is "obstacle" or "purposes and objectives" preemption, which nullifies state laws that stand as an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wyeth v. Levine*, 555 U.S. 555, 563–64 (2009). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

As reflected by the earlier explanation of the NFIP, the program's principal purpose is to reduce the financial burden on the federal government after flood disasters by making flood insurance available to the public on a uniform, nationwide basis. 42 U.S.C. § 4001; *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 770 (8th Cir. 2013); *Nelson v. Becton*, 929 F.2d 1287, 1291 (8th Cir. 1991). The NFIP achieves this goal by administering a flood insurance program that encourages private insurer participation and that flexibly and evenly distributes burdens and risks. 42 U.S.C. § 4001(d).

The parties wade through a deep split of authority in focusing on whether NFIP preempts state law negligence claims arising during the procurement of a policy. However, in every one of their cases, the state law claim was brought against the WYO company. This debate thus misses the point; Yoder is an agent, not a WYO company.

In reaching its goal, the NFIP does not explicitly regulate every aspect of flood insurance. *See Wyeth*, 555 U.S. at 574–75 (framing very narrowly the state law at issue). Specifically, the NFIP creates several benefits for insurers, but few for the insurers' agents. The NFIP specifically prohibits FEMA from "hold[ing] harmless or indemnify[ing] an agent or broker for his or her error or omission." 42 U.S.C. § 4081(c). While the NFIP immunizes *insurers* when they would otherwise be subject to liability, *e.g.* 44 C.F.R. § 61.5(e), this provision reflects the NFIP's intent to not create any new indemnification or immunity for casualty agents. Because Missouri's negligent misrepresentation tort lies within this undisturbed status quo, the tort does not obstruct any provision of the NFIP.

Congressional intent supports this structural reading. *See* 42 U.S.C. § 4001. Tort liability for negligent misrepresentation is entirely consistent with the goal of the NFIP. Holding agents personally liable does not directly affect federal coffers, because the agents would be responsible for a judgment and FEMA can choose to decline to reimburse the WYO company for a judgment arising out of agent negligence. 44 C.F.R. pt. 62, app. A, art. III(D)(3). Nor does it indirectly affect federal coffers; the parties suggest no way in which holding agents personally liable would prevent or discourage WYO companies from continuing their participation in the NFIP or the federal government from effectuating the NFIP's implementation. Rather, the government and WYO companies likely *want* to discourage insurance agents from negligently misrepresenting SFIP provisions, so that consumers have all the information needed to appropriately spread or minimize the risk of flood loss and to stave off (misdirected) litigation. *See also Wyeth*, 555 U.S. at 579 (finding that state failure-to-warn tort suits complemented a federal drug law's aims of ensuring drug safety and effectiveness, because the former "uncover

10
Case 4:13-cv-00380-DGK   Document 54   Filed 07/24/15   Page 10 of 14

unknown drug hazards and provide incentives for drug manufacturers to disclose safety risks promptly").

Negligence claims brought under Missouri law for errors and omissions committed by insurance agents during the procurement process do not pose an "obstacle to the accomplishment . . . of the full purposes and objectives of Congress." *Id.* at 563–64. Therefore, the NFIP does not preempt Count II, so Yoder is not entitled to judgment as a matter of law on the negligent misrepresentation claim.

**B. There is a genuine dispute over whether the Pittmans justifiably relied on Yoder's misrepresentations and whether that reliance caused pecuniary loss.**

The Court now turns to the merits of the Pittmans' claim that Yoder committed negligent misrepresentation by falsely telling them that their flood insurance policy covered all contents of their basement. Negligent misrepresentation requires proof that: "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010). Yoder argues that the Pittmans cannot succeed on the fourth and fifth elements, justifiable reliance and causation.

"The test of whether a plaintiff relied upon a misrepresentation is simply whether the representation was a material factor influencing final action." *ABC Seamless Siding & Windows, Inc. v. Ward*, 398 S.W.3d 27, 35 (Mo. Ct. App. 2013). This inquiry is fact-sensitive. *Id.* at 36. Here, the Pittmans were anxious about possible flood damage to the contents of their basement. Cathy Pittman called Yoder to procure flood insurance. She allegedly told him that she wanted

11

an insurance policy in part to protect everything in the Pittmans' basement. She described in detail the contents of her basement. While on the phone, she did not have a copy of the policy in front of her. Yoder assured her that he would give him a policy that insured all of the contents of their home, including the basement. He did not mention any limitations on basement content coverage. Finally, Yoder is a professional insurance agent. A reasonable jury could find on these facts that Yoder's alleged misrepresentation was a material factor in the Pittmans' decision to purchase the policy and then forego moving any uninsured contents out of their basement. Therefore, the Pittmans could justifiably rely on his alleged misrepresentation that the flood insurance policy he was going to procure for them contained coverage for all contents of their basement. *See id.* at 35.

Further, this justifiable reliance caused the Pittmans to suffer pecuniary loss. Causation in this context comprises both causation-in-fact and proximate cause. *Id.* Each is potentially satisfied here. The Pittmans erroneously believed that their policy covered all contents of their basement solely because Yoder told them it did. Laboring under that mistaken impression alone, the Pittmans elected not to move uninsured items out of the basement. Yoder's misrepresentation was the only reason that uninsured contents were in the basement when the river flooded the Pittmans' basement in June 2008. Thus, causation-in-fact is met. Further, a reasonable jury could find that a reasonable and probable consequence of Yoder's alleged misrepresentations would be a flood reaching the property and damaging contents that would not have otherwise been left in the basement. Thus, proximate cause is met. *See id.*

Yoder argues that the Pittmans' reliance was unjustified as a matter of *law*, because they could have read their policy at any time before the flood and realized that his prior representations about the policy coverage were incorrect. Whether a party can be liable for

negligent misrepresentation when his statements *predate* the formation of a contradictory contract is "a difficult issue, and it is appears to be unresolved under Missouri law." *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1033 (8th Cir. 1999) (ultimately not resolving the issue); *cf. id.* ("It is well-settled that *post*-contract-formation misrepresentations of this kind will support an action for fraud or for negligent misrepresentation." (emphasis added)). Yoder cites no Missouri authority for the proposition that the Pittmans cannot establish reasonable reliance as a matter of law by virtue of their failure to read the policy.

Instead, Yoder relies on the doctrine that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984). However, "[t]he scope of this authority may be explicitly defined by Congress or be limited by delegated legislation." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Here, NFIP regulations create the legal fiction that the insurance agent acts for the *insured*, not the WYO company or the federal government underwriting the flood insurance policy. 44 C.F.R. § 61.5(e). Therefore, this doctrine does not establish that the Pittmans unreasonably relied on Yoder's alleged misrepresentations as a matter of law. *Cf. Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 307–10 (5th Cir. 2015) (using *Merrill* and *Heckler* to bar a negligent misrepresentation claim by insureds against their *WYO company*).

Because there is a genuine dispute over facts material to the Pittmans' negligent misrepresentation claim, the Court must deny summary judgment to Yoder.

**Conclusion**

For the reasons discussed above, Yoder's Motion for Summary Judgment (Doc. 44) is GRANTED IN PART. Judgment is entered in Yoder's favor on all claims against him except for negligent misrepresentation.

**IT IS SO ORDERED.**

Dated:  July 24, 2015   　　　　　　　　　　　　 /s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT